IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| First South Bank, ) | CIVIL ACTION №: 3:10-2097-CMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| Fifth Third Bank, N.A., doing business as ) | **(Jury Trial Demanded)** |
| Fifth Third Bank and formerly known as ) | |
| and successor in interest of First Charter ) | |
| Bank and First Charter Corporation, First ) | |
| Charter Bank and First Charter Corporation ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff First South Bank, by and through its undersigned counsel, asserts this action against Defendants Fifth Third Bancorp, Fifth Third Bank, N.A., both doing business as Fifth Third Bank and successor in interest of First Charter Bank and First Charter Corporation, First Charter Bank, and First Charter Corporation alleging as follows:

**PARTIES**

1. Plaintiff First South Bank ("First South") is a corporation organized and existing pursuant to the laws of the State of South Carolina with its principal place of business in South Carolina.

2. Defendant Fifth Third Bank, N.A. ("Fifth Third") is a national banking association and a wholly-owed subsidiary of Fifth Third Bancorp, a corporation organized and existing pursuant to laws of a state other than the State of South Carolina and, at all times herein, maintained its principal place of business outside this State. At all times herein, Fifth Third is a successor to First Charter Bank and First Charter Corporation.

3.     Defendants First Charter Bank and First Charter Corporation (collectively "First Charter"), at all times relevant herein, were corporations organized and existing pursuant to the laws of a state other the State of South Carolina and transacted business in this State pursuant to a Certificate of Authority with the South Carolina Secretary of State.

4.     Upon information and belief, Fifth Third acquired First Charter on or about June 2008 and became successor in interest by merger and acquisition and thereby assumed all obligations and liabilities of First Charter.  The allegations contained herein involve the acts and omissions of an entity formerly known as First Charter and its successor in interest, Fifth Third. They are collectively referred herein as "Defendants."

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Defendants because they own property and regularly transact business in the State of South Carolina.  Upon information and belief, Defendants' contacts within the State of South Carolina have been enduring, continuous and systematic through their agents, subsidiaries, and related entities.

6.     In addition, this Court has personal jurisdiction over Defendants pursuant to S.C. Code Ann. § 36-2-803(A) because First South's causes of action arise from Defendants or their subsidiaries, related entities, or agents transacting business in this State, commission of tortuous acts that occurred in this State, and entering into a contract with First South to be performed, in part, in this State.  Defendants also committed tortious acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and while deriving substantial revenue from this State.

7.     Venue is proper in this division pursuant to 28 U.S.C. § 1391.

## FACTS

8.     On or about August 15, 2006, Defendants appeared at First South's office in Spartanburg, South Carolina for the purpose of soliciting the purchase or sale of participations in commercial real estate loans. Thereafter, Defendants presented the opportunity to participate in the financing of a construction and development loan ("Loan") to Burton Creek Investment, LLC.

9.     The purpose of the Loan to Burton Creek Investment, LLC was for the refinancing of a 251 tract of raw land and the funding of development cost of Phase 1 (204 lots) in a multi-phased residential subdivision (a total of 385 lots were to be built over three phases) in Lincoln County, North Carolina. Defendants represented to First South Bank that 260 lots (including 56 lots in Phase II) were presold with letters of credits and cash deposits securing the contracts, and that an independent general contractor would provide a fixed price contract to complete the construction of Phase 1 of the Burton Creek subdivision.

10.    On or about March 7, 2007, First South entered into a Participation Agreement ("Agreement") with Defendants to finance the Loan to Burton Creek Investment, LLC. The aggregate amount of the Loan was Eleven Million and No/100 ($11,000,000.00) Dollars and First South agreed to assume and fund thirty-six percent (36%), or Four Million and No/100 ($4,000,000.00) Dollars thereof. Attached hereto and incorporated by reference as Exhibit 1 is a true and accurate copy of the Agreement entered into between the parties.

11.    In consideration of Agreement, First South relied on the representations Defendants and understood this Loan would be evidenced and secured by a Loan Agreement, Promissory Note, Mortgage, and Security Interest (collectively "Loan Documents") of Burton Creek Investment, LLC, along with personal Guaranty Agreements duly executed by James R.

and Allison L. Duncan, Steven K. and Laura L. Helms, Larry S. and Shirley C. Helms, Jake C. and Cynthia P. Helder, C. Mark and Kimberly H. Tyson and L. Mark and M. Carol Tyson (collectively "Borrowers").

12.     Defendants represented to First South that the Loan would be closed in a prudent, proper, legal and commercially reasonable manner.  Defendants further represented the closing would be conducted by an attorney and that all closing documents, including personal guarantor agreements, would be executed prior to or at the closing and as a condition precedent to this Agreement and the advance of funds by First South to Defendants pursuant thereto.

13.     From the inception, Defendants committed gross mismanagement and fraud. Defendants consented to and permitted Loan to be closed without following usual and customary procedures of a complex commercial loan and failed to require Defendants' representative or an independent attorney to handle the closing process.  Defendants conspired to obtain a sham opinion letter from J. Bennett Glass, P.A., Attorney at Law, for the benefit of First South. Attorney Glass certified the Loan was closed in a commercially prudent manner and that all Guaranty Agreements "have each been duly executed and delivered by Guarantors" as of March 7, 2007.  Despite these representations, one or more of the Guaranty Agreements were not delivered or executed on or before the closing date.  Upon information and belief, one or more of the Guaranty Agreements contained forged signatures of the Borrowers and the Defendants knowingly provided falsified notarizations.

14.     Pursuant to the nature of the transaction and terms of the Agreement, Defendants assumed the responsibility of servicing and administering the Loan and were required to act with full disclosure, loyalty, good faith, and candor to First South with respect to this transaction.

15.     Pursuant to the Agreement, First Charter Bank was prohibited from altering, extending, revising, or modifying in anyway the terms and conditions of the Loan Documents without the express written consent of First South.  Paragraph 11 of the Agreement provides, in relevant part:

> (a)     In the course of its service management and administration of the Loan and the Loan Documents, the Lender agrees that it will not, without Participant's written consent, renew, extend, or consent to the revision of the provisions of any Loan Documents or waive any claim against Borrower, Co-makers, Guarantors or Endorsers of the Loan. ….
>
> (b)     Notwithstanding the forgoing, the Bank will not without consent of the Participant, (1) consent to the reduction of any principal of the Loan other than upon payment thereof; (2) extend the maturity date of the Loan; (3) postpone the due date of the Loan; or (4) release any security for the Loan except in accordance with the provisions of the Loan Documents.

16.     Throughout Defendants' servicing of the Loan, Defendants unilaterally, and without the consent of First South, altered the terms of the Loan Documents, including but not limited to, postponing or waiving the required principal reduction schedule with the Borrowers. These actions were taken in bad faith, through acts of gross negligence, and with a conscious disregard for the terms of the Agreement.

17.     In addition, Defendants failed to timely disclose their unilateral alteration of the Loan Documents and made deliberate false statements to First South, designed to conceal their acts and omissions and to cause First South to make its continued and periodic contributions to draws taken by the Borrowers upon the Loan.

18.     Defendants were required to disclose to First South all material facts and circumstances relating to this Loan.  Specifically, under paragraph 11(c) of the Agreement, First

5

Charter was required to give "prompt telephonic notice (confirmed in writing) of any default under the Loan Documents of which an officer of the Lender responsible for administrating the Loan Documents has actual knowledge."

19. Defendants failed to promptly notify First South of facts and circumstances constituting Events of Default committed by the Borrowers under the terms of the Loan. Defendants' failure to notify First South of Events of Default was deliberate, and committed in bad faith. Defendants committed acts of gross negligence, and acted with a conscious disregard of the terms of the Agreement. In particular, Defendants failed to disclose to First South the following:

> (a) that the requisite governmental regulatory authority in North Carolina had refused to grant sewer tap approvals for more than seventy-four (74) building lots;
>
> (b) that Borrowers had failed to make any principal reduction payments required by the terms of the Loan and due on July 15, 2007, September 15, 2007, December 15, 2007, March 15, 2008, June 15, 2008, and September 15, 2008;
>
> (c) that two (2) Builder Contracts were terminated;
>
> (d) that one or more liens for the nonpayment by Borrowers for work or supply of materials established against the property had been filed and recorded against the property secured as collateral for the Loan;
>
> (e) that Borrowers misappropriated funds for purposes not allocated within the Budget of the Loan;
>
> (f) that substantially more land had been cleared than was authorized in the

        plans; and

    (g)   that other facts and circumstances had occurred which should have allowed a reasonable and prudent lender to know the prospect of payment and performance of the Loan was impaired.

All of these events constituted Events of Default under the Loan Document which Defendants knew or should have known had occurred and which were willfully and intentionally withheld from First South.

20.    Although the above-mentioned Events of Default occurred and Defendants knew or should have known the prospect of payment and performance of the Loan was materially impaired, Defendants wrongfully continued to seek and accept funds from First South and made advances to the Borrowers without disclosure of default and without obtaining the requisite consent and authorization.

21.    After First South learned that Events of Default had occurred, First South then discovered that Borrowers never obtained assignments of contracts for the pre-sale of lots and that no letters of credit or cash deposits were obtained by Defendants, as represented in the underwriting materials prepared by Defendants and furnished to First South. As a result, First South is informed and believes Defendants made these false representations to First South with the intent to deceive and to induce the continued execution of the Agreement and advance of funds by First South to Defendants.

22.    Throughout the servicing and administering of the Loan, Defendants, despite repeated requests, willfully and in bad faith refused to inform First South of the status of the Loan and consciously withheld information that should have been disclosed to First South.

23. In addition, Defendants failed and refused to make available books, records, and documentation in Defendants' possession related to this loan in violation of paragraph 9 of the Agreement. Upon information and belief, when Defendants eventually made available some books and records related to this Loan, they purposefully withheld and failed to disclose to First South material documentation which would further evidence their fraud, bad faith, willful misconduct, material breaches of the Agreement, and gross negligence.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

24. First South incorporates by reference paragraphs 1 through 23 as if fully stated herein.

25. First South and Defendants entered into a duly executed and legally enforceable Agreement on or about March 7, 2007.

26. Through acts of bad faith, willful misconduct, and gross negligence, Defendants have breached one or more of the provisions of the Agreement as follows:

> (a) In failing and refusing to give First South prompt notification of default as required under paragraph 11(b) of the Agreement;
>
> (b) In failing and refusing to obtain consent and authorization from First South for the reduction of the principal of the Loan other than upon payment thereof as required under paragraph 11(b) of the Agreement;
>
> (c) In failing and refusing to obtain consent and authorization from First South to allow Borrowers to postpone or waive the required principal reduction schedule as required under paragraph 11(b) of the Agreement;

(d) In failing and refusing to obtain consent and authority from First South before Defendants altered or modified the terms and conditions of the Loan documents as required under paragraph 11 of the Agreement;

(e) In closing, serving, and maintaining the Loan through acts of gross negligence, willful misconduct, and a conscious disregard for the rights and obligations of First South;

(f) In continuing to seek and accept funds and make advances from First South under the Agreement after defaults occurred;

(g) In failing and refusing to produce and make available all books and records to First South concerning this Loan;

(h) In failing and refusing to communicate with First South concerning the status of the Loan and the existence and nature of any facts or event of which may materially impair the security of the Loan;

(i) In inducing First South to enter into this Agreement through false statement and acts of collusion and concealment;

(j) In permitting the closing of Loan without observance of commercially reasonable standards and allowing acts of fraud and gross irregularities to accompany the closing and execution of Loan Documents; and

(k) In failing to act in good faith and with fair dealing to First South as required with any contract at law.

27. As a direct and proximate result of Defendants' violations of the Agreement, First South has suffered damages in an amount in excess of the $4,000,000.00.

28. The repeated and deliberate breaches were so fundamental and substantial that it defeated the purpose of the Agreement to require an order of rescission. First South is informed and believes it is entitled to an award of damages including but not limited to, attorneys' fees and costs, to place First South in the *status quo ante* prior to the execution of the Agreement.

### FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act)

29. First South incorporates by reference paragraphs 1 through 28 as if fully stated herein.

30. Defendants' breach was accompanied by repeated systemic and deliberate acts of dishonesty, fraudulent and deliberate concealment, bad faith, and unfair dealing towards First South as alleged herein or as may be otherwise revealed through discovery.

31. As a result of Defendants' breach accompanied by one or more of these fraudulent acts made in bad faith, First South is entitled to actual, consequential, and special damages, including rescissionary relief, along with punitive damages to be determined by the trier of fact.

### FOR A THIRD CAUSE OF ACTION
### (Gross Negligence)

32. First South incorporates by reference paragraphs 1 through 31 as if fully stated herein.

33. Defendants owed First South a duty to service and monitor the Loan in a commercially reasonable manner and in strict accordance with the terms and conditions of the Agreement.

34. Defendants owed First South a duty to act reasonably and in good faith in the servicing and monitoring of the Loan and to refrain from committing acts or omissions of gross negligence.

35. Through the bad faith course of conduct, willful misconduct, and gross negligence as enumerated above, Defendants breached their duty of care as required, which has resulted in damages to First South in an amount in excess of $4,000,000.00. Further, First South is informed and believes it is entitled to an award of punitive damages against Defendants based on their conduct.

## FOR A FOURTH CAUSE OF ACTION
**(Misrepresentation)**

36. First South incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37. Defendants made false representations to and concealed material information from First South at all times prior to the execution of the Agreement and during Defendants' servicing of the underlying Loan as set forth herein.

38. Defendants had a pecuniary interest in making said representations and failing to disclose material information.

39. Defendants owed First South a duty of care at law to ensure that truthful information was communicated to First South.

40. Defendants owed First South a duty of full disclosure, candor and transparency of all facts and circumstances related to the execution of Loan Documents and the servicing of the Loan due to provisions of the Agreement.

41.     Due to the nature of the transaction and the relationship between the parties, First South reposed trust and confidence in Defendants for purposes of this transaction and the servicing of the Loan.

42.     Defendants breached this duty with actual deceit and deliberate failure to communicate truthful information to First South, and in many instances, Defendants concealed material facts and circumstances related to this transaction that a commercially reasonable lender should have disclosed.

43.     Defendants' breach was committed through numerous misrepresentations and events of non-disclosure to First South.

44.     First South was reasonable in justifiably relying on the representations of Defendants.

45.     As a direct and proximate result of First South's reliance upon the representations, or lack thereof, of Defendants concerning this transaction, First South has suffered a pecuniary loss for which it is entitled to an award of actual, consequential, and punitive damages against Defendants.

### FOR A FIFTH CAUSE OF ACTION
### (Fraud)

46.     First South incorporates by reference paragraphs 1 through 45 as if fully stated herein.

47.     Defendants made false representations to First South at all times prior to the execution of the Agreement and during the servicing of the underlying Loan as set forth herein.

48.     Defendants failed to disclose to First South material facts and circumstances related to the execution and servicing of the Loan Documents under their legal duty required at law and under the terms of the Agreement.

49. These false representations and deliberate acts of concealment of facts were material.

50. Defendants' actions were undertaken by knowing and conscious acts of dishonesty, unfair dealing, deliberate concealment, false pretenses and an utter reckless disregard of the truth.

51. Defendants' false representations and acts of non-disclosure were committed with the intent of First South to rely and act upon the same.

52. First South, as the participating bank to the Loan, was ignorant of Defendants' fraud and deceit and had a right to rely upon the representations of the Defendants.

53. As a direct and proximate result of First South's reliance upon the representations and non-disclosures of Defendants concerning this transaction, First South has suffered monetary losses for which it is entitled to recover actual, consequential, and punitive damages against Defendants.

WHEREFORE, First South respectfully prays this Honorable Court grant judgment in its favor against the Defendants as follows:

(a) award First South actual, incidental, and compensatory damages;

(b) award punitive damages in favor of First South;

(c) rescind the Agreement and award rescissionary damages to First South;

(d) reimburse First South its attorneys' fees and costs in commencing this action

(e) for prejudgment interest; and

(f) for such other relief as this Honorable Court deems just and proper.

**[Signature Page to Follow]**

                Respectfully submitted,
                COLLINS & LACY, P.C.

By:   \_\_s/ Joel W. Collins Jr._____
        JOEL W. COLLINS, JR. (No. 224)
        jcollins@collinsandlacy.com
        ROBERT F. GOINGS (No. 9838)
        rgoings@collinsandlacy.com
        1330 Lady Street, Sixth Floor (29201)
        Post Office Box 12487
        Columbia, South Carolina 29211
        (803) 256-2660 (phone)
        (803) 771-4484 (facsimile)

and

DONALD W. TYLER (NO. 4161)
dtyler@tcjps.com
TYLER, CASSELL, JACKSON, PEACE & SILVER, L.L.P.
1331 Elmwood Avenue, Suite 300 (29201)
Post Office Box 11656
Columbia, South Carolina  29211-1656
(803) 779-4997 (phone)
(803) 733-2712 (facsimile)

ATTORNEYS FOR PLAINTIFF


**PLAINTIFF REQUESTS A JURY TRIAL**

Columbia, South Carolina

August 11, 2010

14