IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| First South Bank, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:10-2097-MGL |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Fifth Third Bank, N.A., doing business as | ) | |
| Fifth Third Bank and formerly known as | ) | |
| and successor in interest of First Charter | ) | |
| Bank and First Charter Corporation, First | ) | |
| Charter Bank and First Charter Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

_____

This is an action involving claims of breach of contract, breach of contract accompanied by a fraudulent act, gross negligence, misrepresentation, and fraud for actions arising out of a Participation Agreement entered into between the Plaintiff First South Bank ("Plaintiff") and Defendant Fifth Third Bank, N.A., doing business as Fifth Third Bank and formerly known as and successor in interest of First Charter Bank and First Charter Corporation, First Charter Bank and First Charter Corporation ("Defendant") to finance an $11,000,000.00 loan to an investment group ("Loan" or "Burton Creek Loan"). (ECF No. 72.) According to the Amended Complaint, Plaintiff agreed to assume and fund 36 percent (36%) of the Loan at the request of Defendant which was charged with servicing and administering the Loan. (ECF No. 72 at 3-4.) Plaintiff's Amended Complaint alleges several errors on the part of Fifth Third as a part of the closing, servicing, monitoring, and administration of the Loan. (ECF No. 72.) Several related actions associated with the Burton Creek Loan, to include a collection suit, a foreclosure suit, and a lien suit, were brought in the Superior Court in North Carolina counties due to subsequent default of the Loan. (ECF No.

111-1 at 5; ECF No. 117 at 19-20.)

Before this court is Plaintiff First South Bank's Motion to Compel, or Alternatively for an In Camera Review ("Motion to Compel") (ECF No. 111) and Plaintiff First South Bank's Supplemental Filing Regarding Motion to Compel, Or Alternatively for an In Camera Review Pursuant to Court Order (ECF No. 142). In its Motion to Compel, Plaintiff seeks an order from this court compelling Defendant to produce responsive documentation withheld on claims of attorney-client privilege and work product protection, or in the alternative, asks this court to conduct an in camera review of the documents withheld. (ECF No. 111 at 1.) Plaintiff originally requested the production of documents withheld on the basis of a "bank examiner's privilege" but these documents have since been produced. (ECF No. 117 at 33.)

The parties were instructed to continue their efforts to resolve this discovery dispute without further intervention from the court. (ECF No. 135). Counsel indicated that some progress was made however, the dispute had not been resolved completely. (ECF No. 136.) The court subsequently held a status conference to discuss the court's directives and the nature of the discovery dispute. (ECF Nos. 138-140.) The court directed Defendant to update its privilege logs and produce responsive documents in compliance with the court's previous orders to which Defendant confirmed compliance. (ECF Nos. 140 & 141.) Plaintiff indicated receipt of the revised privileged logs but maintain that Defendants have continued to describe the documents on the privilege log in a vague and generalized manner. Thus, Plaintiff submitted copies of the privilege logs highlighting each entry it believes to be discoverable and necessary for an *in camera* inspection. (ECF No. 142.) Plaintiff continues to assert that the referenced documents are not privileged or protected, and any protection from disclosure has been waived based on the language of a Participation Agreement

signed by the parties and the relationship of the parties in the underlying litigation. (ECF Nos. 111-1 & 120.) Plaintiff further argues that any privilege or protection has been waived as a result of Defendant's affirmative defense of "good faith" and "good faith reliance on counsel." Defendant submitted five discs containing copies of each of the documents that were identified by Plaintiff for *in camera* review in Plaintiff's Supplemental Filing Regarding Motion to Compel. (ECF No. 142.) Defendant maintains that Plaintiff's position concerning waiver of privileges is unsupported by the case law and unsupported by a full and fair reading of the terms of the Participation Agreement.

Unfortunately, because the parties were unable to resolve their differences and work out this discovery dispute, this court was forced to engage in the tedious and unpleasant task of sifting through numerous documents to discern what privileges or protections may apply to certain documents, review of multiple and expansive privilege logs and the privileges asserted, and making meaning of the parties' arguments concerning same. The court has reviewed the documents in light of the privilege logs and has considered the parties' arguments and rules accordingly as set forth below.

## DISCUSSION

1. Parties' Arguments.

To briefly summarize the parties' arguments, Plaintiff contends that Defendant has waived any applicable privileges based on the express terms of the Participation Agreement outlined in greater detail below. (ECF No. 111.) Plaintiff argues that it is entitled to documents related to the closing of the loan (including communications with the lenders' closing counsel) and the administration, servicing, and collection of the loan. (ECF No. 111 at 21-25.) Plaintiff argues that the Participation Agreement grants it a vested and contractual interest in certain loan related

materials sought in discovery because the agreement provides that "[t]he Participant shall be vested, to the extent of its participating interest, in any and all of the documents of every nature in the possession of the Lender relating to the Loan." (ECF No. 111-1 at 7.) Plaintiff further notes that the Participation agreement states that the "[l]ender shall hold the Loan Documents as trustee for the benefit of the Participant," and that the Participation Agreement provides Plaintiff with a broad interest in documents of "every nature," not limited to claims of privilege. (ECF No. 111-1 at 7.)

In response, Defendant argues that Plaintiff misunderstands the nature of participation agreements and suggests that the Participation Agreement does not give rise to a fiduciary relationship between the two banks and is instead an "arms length contract." (ECF No. 117 at 2.) Defendant maintains that the terms of the Participation Agreement do not provide or imply that Defendant has waived all privileges related to documents concerning the Burton Creek Loan and that Plaintiff insists upon a reading of Paragraph 9 of the Participation Agreement that would annul work product protections and attorney-client privileges as to each and every document related in any way to the Loan when the Participation Agreement does not explicitly or implicitly eradicate either party's right to counsel or attorney-client relationship or privileges. (ECF No. 117 at 12.) Defendant also seeks to limit the language of Paragraph 9 to extend and refer only to "Loan Documents" as provided in the Participation Agreement rather than any and all documents of every nature related to the Loan irrespective of any privilege that may apply.

Next, Plaintiff argues that Defendant has affirmatively asserted as a Fifth Defense in its answer to the Amended Complaint both "good faith" and "good faith reliance on the advice of counsel" based on language set forth in the Participation Agreement. (ECF No. 111-1 at 11.) Plaintiff argues that a waiver caused by the assertion of this defense means that documents regarding

the Participation Agreement, especially any respective communications with legal counsel should be produced as well as documents that go to the payment of attorneys' fees and costs associated with Plaintiff's participation in the agreement.  Plaintiff contends that Defendant cannot allege that it acted in good faith or followed the advice of attorneys without revealing the nature and substance of that advice.  Defendant maintains that while it has asserted the terms of the Participation Agreement in defense of this lawsuit, it has not asserted an advice of counsel defense or a defense that would put its communications with counsel or its attorneys' advice at issue.  (ECF No. 117 at 13.)

Plaintiff also argues that the attorney-client privilege does not apply in a subsequent dispute when an attorney jointly represented the interests of parties and that documents prepared in connection with the underlying litigation were prepared for the benefit of Plaintiff and related to the Loan, thus, Plaintiff claims that any asserted privilege has been waived based on the Participation Agreement and Litigation Agreements.  (ECF No. 111-1 at 16-18.)  Plaintiff argues that it was led to believe that McGuire Woods was representing the interests of both First South and Fifth Third in the underlying litigation.  (ECF No. 111-1 at 6.)  Consequently, Plaintiff argues that as joint participating lenders, both banks have a common interest in the underlying litigation and therefore, there is no privilege between these two banks due to the "common interest rule" because their interests were jointly represented in the underlying litigation.  (ECF No. 111-1 at 16.)  Defendant denies that there is any evidence that McGuire Woods represented Plaintiff in the underlying litigation matters and states that Plaintiff was not a party to the underlying actions.  (ECF No. 117 at 20.)  Defendant further states that the parties have been in dispute concerning certain aspects of the Burton Creek Loan deal and thus, in an effort to preserve privileges and protections from third

party discovery while preserving privileges and protections of the respective parties, the parties agreed to a confidentiality agreement. (ECF No. 117 at 22-23.) Plaintiff also argues that Defendant has generally overasserted its privilege claims, particularly concerning documents, records and communications prepared in the ordinary course of business.

2. <u>Legal Standards</u>.

A.    Attorney-Client Privilege.

South Carolina privilege law applies in this diversity action. *Fed. R. Evid.* 501; *see also Gilliard v. Great Lakes Reinsurance (U.K.) PLC*, No. 2:12-cv-00867-DCN, 2013 WL 1729509 (D.S.C. Apr. 22, 2013). "The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *See Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 293, 692 S.E.2d 526, 529 (S.C. 2010) (citing *State v. Owens*, 309 S.C. 402, 407, 424 S.E.2d 473, 476 (S.C. 1992)). The privilege consists of the following essential elements: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except where the protection is waived. *Id.* at 530.

B.    Waiver of the Attorney-Client Privilege.

"The attorney-client privilege is owned by the client and, therefore, can be waived by the client." *Floyd v. Floyd*, 365 S.C. 56, 89, 615 S.E.2d 465, 483 (S.C. Ct. App. 2005)(finding an implied waiver of privilege by making communications with counsel an issue by "open[ing] the door to admission of the letters by his assertions at trial that he was following the advice of counsel in administering the trust."); *see also State v. Thompson*, 329 S.C. 72, 76, 495 S.E.2d 437 (S.C. 1998)

("The attorney-client privilege belongs solely to the client and can only be waived by the client."). Waiver may be either explicit or implied. *See generally Floyd,* 615 S.E.2d at 484. "Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject." *Marshall v. Marshall*, 282 S.C. 534, 538, 320 S.E.2d 44, 46-47 (S.C. Ct. App. 1984). While it is also possible to implicitly waive the privilege, such a waiver must be "distinct and unequivocal" as is the case with an explicit waiver. *Thompson*, 495 S.E.2d at 439 (citing *State v. Hitopoulus*, 279 S.C. 549, 551, 309 S.E.2d 747, 749 (S.C. 1983)).

      C.      Work Product Doctrine.

      Federal law governs the work product doctrine, even in diversity cases. *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). The doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). The party claiming work product protection has the burden of establishing entitlement to the protection. *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir.1988). For the work product doctrine to apply, "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992) (emphasis in original); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 136 (N.D.Ill.1993) ("[T]he anticipation of future litigation must have been the primary motivation which led to the creation of the documents. . . . Documents which do not refer to work product prepared by an attorney or other

-7-

agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable.").

3. <u>Review of Relevant Documents and Analysis.</u>

    A.    Participation Agreement.

On March 7, 2007, Plaintiff entered into a Participation Agreement ("Agreement" or "Participation Agreement") with Defendant to finance an $11,000,000.00 loan to Burton Creek Investment, LLC ("Burton Creek") for the construction and development of a residential division in North Carolina. (ECF No. 72-1 at 1.) Under the terms of the Agreement, Plaintiff agreed to assume and fund 36%, or $4,000,000, of the $11,000,000.00 loan. (ECF No. 72-1 at 1.) Defendant was the "Lead bank" or the "Lender" and First South was the "Participating bank" or the "Participant." (ECF No. 72-1 at 1.) The terms and conditions of the Loan are set forth in the Agreement and it is further acknowledged that the Loan would be secured by a Promissory Note, Mortgage and Security Agreement, UCC-1 financing statement, multiple guaranty agreements and other loan documentation to include a Construction Loan Agreement. These abovementioned documents and "all other documents, instruments, certificates and agreements executed and delivered in connection with the Loan Agreement . . ." are referred to collectively as the "Loan Documents." (ECF No. 72-1 at ¶ 1.)

The Participation Agreement states that all losses incurred by Defendant in connection with the Loan Documents would be borne by Defendant and Plaintiff, the Participating Bank, in accordance with their Participation Percentages. The Participating Bank has an obligation to reimburse and indemnify Defendant, the Lending Bank, in proportion to its participating interest, for, from and against various liabilities, obligations, losses, damages and penalties, costs, expenses and

-8-

the like which could be imposed on, incurred by, or asserted against the Lending Bank in any way

relating to or arising out of the Loan Documents.  Plaintiff, however, would not be obligated to pay

its pro-rata share (36%) of any such expenses "resulting from the Lender's bad faith, willful

misconduct or gross negligence or to the extent that the Lender has been indemnified or reimbursed

by the Borrower."  (ECF No. 72-1 at ¶ 7.)

Both the court and the parties have concluded that the operative (or contested, as it were)

language is contained in Paragraph 9 of the Participation Agreement.  The Paragraph states in full

as follows:

> 9.    The Lender shall be responsible for maintaining, or providing for the maintenance of, a complete set of books and records as to the Loans, including, but not limited to, a record of each receipt and each disbursement. The Lender shall retain physical possession of the Loan Documents. The Participant may at its request review the Loan Documents. The Participant shall be vested, to the extent of its participating interest, in a beneficial interest in any and all of the documents of every nature in the possession of the Lender relating to the Loan. The Lender shall hold the Loan Documents as trustee for the benefit of the Participant, the Lender and all other owners of participation interests to the extent of their beneficial interests.

(ECF No.  72-1 at 3).

B.    Analysis.

To summarize Plaintiff's contentions, 1) Plaintiff contends that, based on the principles of

waiver, the relationship of the parties, and Paragraph 9 of the Participation Agreement, Defendant

is barred from withholding any document related in any way to the Burton Creek Loan, including

documents that contain attorney-client privileged communications between Defendant and its

counsel; and 2) Plaintiff also maintains that Defendant has waived all privileges related to the Burton

Creek Loan because Defendant is asserting an "advice of counsel" defense.  Based on these two theories, Plaintiff firmly believes that it is entitled to "thousands of relevant and necessary documents in this litigation." (ECF No. 142.) Plaintiff has listed each entry on Defendant's revised privileged logs that it believes to be discoverable and necessary for an *in camera* inspection.  (ECF No. 142 at 1.)  Plaintiff asks this court to order the production of all referenced materials so designated on the privilege logs.  (ECF No. 142 at 2.)  The privilege logs roughly respond to groups of documents to include certain of Defendant's bank files and documents in the possession of McGuire Woods.[1]  Plaintiff also makes some more pointed requests for certain categories or types of documents which Plaintiff contends are not protected or privileged: 1) documents prepared in connection with the underlying litigation; 2) documents related to the closing of the loan; 3) documents related to the administration, servicing, and collection of the loan routinely prepared in the ordinary course; 4) documentation regarding legal expenses incurred in the underlying litigation; 5) documents regarding the Participation Agreement; and 6) documents withheld on the "Bank Examiner  Privilege" which have since been produced.

    As a threshold matter, the court takes up consideration of Plaintiff's overarching argument that the Participation Agreement reflects a waiver of otherwise applicable privileges and protections on the part of Defendant.  The court will then consider Plaintiff's argument that Defendant waived

---

[1] Exhibit 1:  Defendants' Revised Privilege Log Related to Fifth Third Bank ESI Documents (Revises FSB Motion to Compel Exhibit 1) (100 pages);  Exhibit 2: Defendants' Revised Privilege Log Related to Fifth Third Bank Documents (Revises FSB Motion to Compel Exhibits 2 and 3) (22 pages); Exhibit 3:  Defendants' Revised Privilege Log Related to McGuire Woods Files (Revises FSB Motion to Compel Exhibit 4)(27 pages); Exhibit 4: Defendants' Revised Privilege Log Related to McGuire Woods LLP's ESI Documents (Revises FSB Motion to Compel Exhibit 5)(84 pages); Exhibit 5:  Defendants' Revised Privilege Log Related to McGuire Woods LLP's Documents  (Revises FSB Motion to Compel Exhibit 6) (14 pages).

any applicable privileges and protections by putting the advice of counsel at issue in responding to Plaintiff's Amended Complaint.

### 1. <u>WAIVER ON GROUNDS OF PARTICIPATION AGREEMENT</u>

Plaintiff asks this court to find that "any privilege or protection has been waived by the terms of the Agreement." (ECF No. 111-1 at 7.) Plaintiff argues that it has a vested and contractual interest in any and all documents relating to the Loan in Defendant's possession. (ECF No. 111-1 at 7.)

Paragraph 9 of the Participation Agreement charges the Lending Bank with the responsibility of maintaining a complete set of books and records as to the Loans in its possession. (ECF No. 72-1 at 3). The Participation Agreement allows the Participating Bank to request to view the Loan Documents and states that the Lending Bank will hold the Loan Documents as trustee for the benefit of the Participating Bank according to its **beneficial interest**. (ECF No. 72-1 at 3) (emphasis added). Then, "[t]he Participant shall be vested, to the extent of its participating interest, in a **beneficial interest** in any and all of the documents of every nature in the possession of the Lender relating to the Loan." (ECF No. 72-1 at 3)(emphasis added).

Noticeably absent from Plaintiff's direct quote of Paragraph 9 (and from its briefing in general) are the words "beneficial interest" used to describe the nature of Plaintiff's interest in the Loan Documents as well as documents held in the possession of the Lender relating to the Loan. Plaintiff would have this court find that Plaintiff's "beneficial interest" in certain Loan and Loan related documents invalidates otherwise valid privileges and protections that may apply to certain documents. A beneficial interest is defined as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." Black's Law Dictionary (9th ed. 2009). While

-11-

it is somewhat challenging to apply such a definition to documents, the plain language of the Participation Agreement does not go as far as Plaintiff posits as part of its waiver theory.  Plaintiff has cited no case law in support of a position that a contractual "beneficial interest in . . . documents" eviscerates long-standing legal privileges and protections or that, for example, "a lawyer must turn over even to his own client all of his work product on the client's case, no less to turn such material over to a third party who has a contractual right to see the client's files." *First Wisconsin Mortg. Trust v. First Wisconsin Corp.*, 86 F.R.D. 160, 168 (E.D.Wis. 1980).

On the other hand, Defendant would have this court to narrowly construe the phrase "vested or contractual interest" to find that the entire paragraph is limited to a very specific subsection of Loan documents.  This court declines to do so.  The Paragraph, regardless of intent in hindsight, broadly states that the "Participant shall be vested, to the extent of its participating interest, in a beneficial interest in any and all of the documents of ever nature in the possession of the Lender relating to the Loan."  This portion of the Paragraph does not appear to limit itself only to the defined "Loan Documents" but seemly extends to a wider range of "any and all documents" that concern the Loan that are "in the possession of the Lender."  The language, however, does not necessarily obliterate any and all privileges and protections that may exist.  The extent of Plaintiff's beneficial interest in the Loan Documents and Loan related documents is set forth in and limited by the Participation Agreement—a contract that does not explicitly or implicitly eradicate *either* party's right to counsel, or their attorney-client relationships, or lawful privileges and protections that apply to documents related to the Loan.  Thus, to the extent they have not already been produced, Fifth Third is hereby ordered to produce any and all non-privileged or protected documents "of every nature" in its possession relating to the Loan.

Plaintiff is correct in its assertion that the Participation Agreement must be considered in conjunction with the Litigation Agreement between the parties. (ECF No. 111-1 at 20-21.) The Litigation Agreement dated November 19, 2009, and between First South Bank and McGuire Woods specifically concerns: 1) "a loan that Fifth Third made to Burton Creek (the "Loan"); *Fifth Third Bank, N.A. v. Burton Creek Investment, LLC,  L. Carlton Tyson, M. Carol Tyson, Larry S. Helms, Shirley C. Helms, Steven K. Helms, Laura L. Helms, Jake C. Helder, Cynthia P. Helder, James R. Duncan,  Allison L. Duncan, C. Mark Tyson, and Kimberly H. Tyson*; Mecklenburg County Superior Court Case No. 09-CVS-14593 (the "Lawsuit"); and 3) In The Matter of The Foreclosure of a Deed of Trust and Security Agreement from Burton Creek Investment, LLC dated March 8, 2007, and recorded on March 9, 2007, in Book 1906 at Page 285 of the Lincoln County Public Registry by David T. Simpson, Jr. (Substitute Trustee), Lincoln County Superior Court, Cause No. 09-SP-538 (the "Foreclosure Action"). (ECF No. 111-13 at 1.) In connection with the Participation Agreement (which does in fact grant Plaintiff a beneficial interest in Loan Documents and documents related to the Loan), McGuire Woods acknowledged an exchange of some information and documents at Plaintiff's request concerning the Loan, the Lawsuit, and the Foreclosure Action. McGuire Woods, on behalf of Defendant wrote to Plaintiff to confirm that both banks desired and intended for all communications and documents between the banks related to the Loan, the Lawsuit, and the Foreclosure Action to remain confidential and to be protected from disclosure to any third-parties. (ECF No. 111-13 at 1-2.) The letter also acknowledged and confirmed that the two banks had a common purpose in the Lawsuit and the Foreclosure Action and that "a mutuality of interests" existed between Defendant and Plaintiff concerning the Loan, the Lawsuit, and the Foreclosure Action such that the parties desired to cooperate with respect to the Lawsuit and exchange

information concerning the Loan, the Lawsuit, and the Foreclosure Action subject to the terms of

the Participation Agreement. (ECF No. 111-13 at 2.) Specifically, the Litigation Agreement states

that:

> The substance of communications between or among the Banks whether in oral or written form, and any documents relating to or containing any such communications, shall be treated and maintained as privileged and confidential communications between Fifth Third and First South and their respective counsel. Information, communications or documents of any kind that are privileged, confidential or subject to the work product doctrine as to one of the Banks shall not lose such status because they are disclosed between the Banks.
>
> . . .
>
> The Banks further agree that their agreement, as confirmed by this letter, does nothing to impair or waive any claims, potential claims or potential disputes between First South and Fifth Third. Fifth Third and First South agree that communications and documents related to the Loan, the Lawsuit or the Foreclosure Action that are confidential, privileged or protected from disclosure shall continue to be held confidential and subject to a joint defense privilege even if a dispute or claim arises between First South and Fifth Third concerning the Loan, the Lawsuit, the Foreclosure Action, or the Participation Agreement. However, First South and Fifth Third agree that the agreement confirmed by this letter does not impair the ability of either Bank to use or rely upon information and/or documents related to the Loans, the Lawsuit or the Foreclosure Action in connection with any dispute or claim between the Banks that exists or may arise.

(ECF No. 111-13 at 2.)

Plaintiff contends that no privilege can exist between joint clients and that this is a dispute

between the jointly represented parties of McGuire Woods—Plaintiff and Defendant. (ECF No. 111-

1 at 11.) Despite the language and the import of the Litigation Agreement, Plaintiff contends that

McGuire Woods represented the interests of both Plaintiff and Defendant in the underlying litigation

cases. (ECF No. 111-1 at 6.) Plaintiff contends that as "joint participating lenders," Plaintiff and Defendant had a common interest in the Underlying Litigation, and the "common interest rule" means that there is therefore no privilege between the two banks. (ECF No. 111-1 at 16-17.) Defendant refutes this position and maintains that the Litigation Agreement represents an effort to protect Defendant's privileged communications with McGuire Woods and McGuire Woods' work product arising from its representation of Defendant. (ECF No. 117 at 24.) Defendant asserts that such an agreement was prudent because McGuire Woods did not represent Plaintiff (as there would be no need for such an agreement if McGuire Woods represented both banks) and notes that the Litigation Agreement also expressly acknowledges there were disputes between Plaintiff and Defendant regarding the Loan and the Participation Agreement at the time it was signed. (ECF No. 117 at 23-24.)

When a party claiming the attorney-client privilege "voluntarily disclose[s] confidential information on a given subject" to a third party, the disclosing party generally waives any attorney-client privilege that would attach to the information. *See Hanson v. U.S. Int'l Dev.*, 372 F.3d 286, 293-94 (4th Cir. 2004). An exception to this rule is the "joint defense privilege" or common interest rule. *In re Grand Jury Subpoenas*, 902 F.2d 244, 250 (4th Cir.1990). The Fourth Circuit Court of Appeals has held the joint defense privilege or common interest rule applies as long as the parties share a common interest about a legal matter, even when the holder of the interest is a non-party or a potential co-party to prospective litigation. *Id.* at 249-50. "[A]s an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *Id.* at 249 (quoting *Transmirra*

-15-

*Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572, 578 (S.D.N.Y.1960)). "'[T]he privilege has been applicable in virtually any litigation-related setting, provided the parties share a common interest, and that confidential information was exchanged to facilitate their legal representation.'" *Fort v. Leonard*, 7:04-1028-HFF-WMC, 2007 WL 518593 (D.S.C. 2007) (citing John Freeman, The Common Interest Rule, 6 S. Carolina Lawyer 12 (1995)).

As is likely evident from the above discussion of the law, a presupposition of separate privileges is required in order for the joint defense privilege to have any meaning or import and it is the agreement that allows parties with a common interest to communicate with their respective attorneys and with each other to prosecute and defend claims without waiving privileges and protections. *In re Grand Jury Proceedings*, 902 F.2d at 249. There would in fact, be no need for this type of special confidentiality agreement to maintain and preserve privileges, if McGuire Woods was representing both Fifth Third and First South in the underlying litigation matters. Plaintiff cannot have it both ways. Plaintiff's reading would strip the entire agreement of any meaning, discount the unique nature of participation agreements, and ignore the importance of separate representation and conflicts of interests of counsel. *See generally In re Colocotronis Tanker Securities Litig.*, 449 F. Supp. 828 (S.D.N.Y. 1978) (rejecting the notion that an attorney-client relationship existed between participating lenders and law firms that represented the principal lender).

When the court considers the Participation Agreement in light of the provisions of the Litigation Agreement, signed by Plaintiff, the court cannot conclude that the Participation Agreement's Paragraph 9 results in a wholesale waiver of the attorney-client privilege and work-product protection. The Participation Agreement and the Litigation Agreement work in tandem to

-16-

take into account the unique nature of participation agreements between banks, and to allow select information to be exchanged between the two banks while preserving applicable privileges and protections. Thus, the court finds no basis for Plaintiff's claims that Defendant compromised or waived its rights to assert privileges and protections over the subject documents.

### 2. **"AT ISSUE WAIVER"**

Plaintiff cites Defendant's "Fifth Defense" in its Answer to Plaintiff's Amended Complaint (ECF No. 84) as evidence that Defendant has waived the attorney-client privilege and work-product protection by putting "good faith" and "good faith reliance on the advice of counsel" at issue in this matter. The subject Fifth Defense is set forth below:

**Fifth Defense**

Plaintiff's claims against Defendants are barred or limited in whole or in part by terms of the Participation Agreement, which Defendants incorporate by reference. Defendants plead as a defense to each of the claims for relief all relevant terms and conditions of the Participation Agreement, including without limitation the terms of the Agreement in paragraphs 3, 7, 8, 11 and 16, and the following terms from paragraph 10 of the Agreement:

Lender shall perform normal servicing responsibilities pursuant to this Agreement without compensation . . . Neither the Lender nor any of its shareholders, directors, officers, employees or agents shall be liable in any manner to the Participant for any action taken, or omitted to be taken, in good faith by it or them in connection with the Loan Documents or be responsible for the consequences of any oversight or error of judgment, except for losses due to gross negligence or willful misconduct. Without limiting the generality of the foregoing, the Lender may consult with legal counsel, independent public accountants and other experts selected by the Lender and shall not be liable for any action taken or omitted to be taken in good faith by the Lender in accordance with the advice of such counsel, accountants or experts. The Lender shall not be responsible or liable (expressly or impliedly) in any manner to the Participant for the due execution, effectiveness, genuineness, validity or enforceability of the Loan

Documents, or the Note, or for any certificate, report or other document used under or in connection with the Loan Documents or for the truth or accuracy of any recitals, statements, warranties or representations contained herein or in any certificate, report or other documents hereinafter furnished to it by or on behalf of the Borrower or be under any obligation to the Participant to ascertain or inquire as to the performance or observance by the Borrower of any of the agreements or conditions set forth herein or in the Note as to use of any money loaned under the Loan Agreement.

(ECF No. 84 at 9-10.)

Plaintiff contends that this Fifth Defense, represents Defendant's assertion of both a "good faith" and a "good faith reliance on the advice of counsel" defense which put the advice and communications with counsel "at issue" in this matter and thus, "all documentation on the privilege log regarding the Burton Creek loan should be produced." (ECF No. 111-1 at 25.) Plaintiff further contends that these materials are relevant because Defendant appears to be claiming the defense as the justification for: 1) resolving the Collection suit for a reduced amount; 2) payment of McGuire Woods's legal bills; and 3) the decision not to pursue an action against the closing attorney. Plaintiff also contends that Defendant is obligated to produce any documents regarding the Participation Agreement, especially any related communications with legal counsel.

Defendant argues that it has not asserted an advice of counsel defense nor has it put its attorneys' advice at issue in connection with any defense it has raised. (ECF No. 117 at 12.) Defendant claims that nothing in the Participation Agreement suggests that Plaintiff can hold Defendant liable in connection with the issuance and management of the Loan simply because it did not pursue legal malpractice claims against third parties and that Plaintiff is seeking to make the legal malpractice claims an issue in this case in an effort to support its separate claims against the closing attorney. (ECF No. 117 at 16.) Defendant also claims that there is nothing unique about documents

-18-

related to the "nature and extent of legal expenses incurred in the underlying litigation" that alters the privilege or work product protection that applies to the documents. (ECF No. 117 at 32.) Finally, Defendant claims that McGuire Woods never billed Plaintiff for any fees related to the Burton Creek loan and that it has met its duty related to the production of documents involving legal expenses. (ECF No. 117 at 32.) The parties clearly fundamentally disagree as to whether the citation to certain portions of the Participation Agreement in Defendant's Fifth Defense constitutes raising an affirmative defense of advice of counsel. The question comes down to whether the inclusion of the terms of the Participation Agreement means that Defendant intended to specifically rely on the terms of the Participation Agreement in defense of its claims or intended to rely on the advice of counsel in defense of its claims.

As an initial matter, the court notes that Plaintiff in fact attached and incorporated a true and accurate copy of the Participation Agreement to its complaint as Exhibit 1. (ECF No. 72-1.) Thus, the court finds that the Participation Agreement first became an issue when Plaintiff raised and incorporated it into its Amended Complaint. Next, the court has carefully reviewed Defendant's Answer to Plaintiff's Amended Complaint with particular attention to the section entitled "Additional Defenses." (ECF No. 84 at 8.) Only one of the listed additional defenses, the "Fifth Defense," quotes any language from the Participation Agreement or even references the Participation Agreement directly. The Fifth Defense is set forth as a "defense to each of the claims for relief" asserted in the Amended Complaint to include causes of action for breach of contract, breach of contract accompanied by a fraudulent act, gross negligence, misrepresentation, and fraud. (ECF No. 84 at 9.) The court must determine whether specific language of the Fifth Defense and its apparent invocation of the Participation Agreement, and particularly its language concerning "good faith" and

-19-

a "good faith reliance on the advice of counsel" waived Defendant's right to rely on the protection of the attorney-client privilege and/or work product doctrine by putting the matter "at issue."

Plaintiff makes a blanket argument that the attorney-client privilege and work product protections are waived for all withheld documents based on Defendant's assertion in its Fifth Defense of its Answer to Plaintiff's Amended Complaint.  Plaintiff cites a single South Carolina state court decision, *Floyd v. Floyd*, 365 S.C. 56, 615 S.E.2d 465 (S.C. Ct. App. 2005), in support of its "at issue" waiver argument.  Defense counsel indicates that this is the only reported case under South Carolina law that it has identified on this issue and the court concludes similarly upon its own review.  In *Floyd*, the South Carolina Court of Appeals discussed waiver of the attorney-client privilege protecting certain letters based on: 1) the production of letters to a third-party and 2) by certain assertions made by the trustee at trial that he was following the advice of counsel in administering the trust.  *Floyd*, 615 S.E.2d at 484.  The court there considered the impact of assertions made at trial and likened the testimonial assertions to the "door-opening doctrine" in the criminal context.  *Id.* at 484.  The court concluded that the doctrine applies in the civil context as well as it would not be fair for a party to choose to forgo the protection of the rule by introducing evidence the opposing party would not be permitted to go into fully.  *Id.*   The court went on to discuss the several times at trial the trustee repeatedly professed that he relied on the advice of various attorneys in formulating his position regarding the trust expenses.  *Id.*  The court concluded that "by these assertions, he opened the door to the admission of the letters." *Id.*

Plaintiff reads *Floyd* to stand for the broad proposition that a party may implicitly waive the attorney-client privilege by placing a privileged communication "at issue" in a case. (ECF No. 111-1 at 10.)  The court does not find *Floyd* to be applicable here based on the facts and the record, and

-20-

therefore does not support Plaintiff's wide-sweeping argument that Defendant has put the advice of counsel "at issue" or has otherwise "opened the door" to the production of otherwise privileged documents by asserting an advice of counsel defense.  (ECF No. 111-1 at 22.)  There are several problems with Plaintiff's assertion that *Floyd* (and thus, South Carolina attorney-client privilege law) supports its position.  First, unlike the trustee in *Floyd*, Defendant does not appear to have made any disclosures or made any statements (i.e., at a deposition), concerning any specific advice or communication with counsel.  In *Floyd*, the trustee was affirmatively relying on certain letters and referenced them numerous times at trial in defense of his actions.  *Floyd*, 365 S.C. 56, 615 S.E.2d at 484.

Plaintiff claims that Defendant is claiming the defense of good faith reliance on the advice of counsel as a basis for various conduct, i.e., resolving the collection suit for a significantly reduced amount, to justify payment of McGuire Woods's legal bills, and failure to bring an action against the closing attorney, but it is not clear how it has come to make these specific deductions entirely based on a more general recitation of the Participation Agreement which also outlines a fairly limited role for Defendant in performing normal servicing responsibilities related to the loan.  It is also unclear how Plaintiff has determined that this recitation now forces Defendant to provide Plaintiff with each and every document or communication due to waiver when Plaintiff is unable to identify a single privileged matter or subject area that has actually been revealed or disclosed.  *In re Von Bulow*, 828 F.2d 94, 102-103 (2d Cir.1987) (disclosure of privileged communications did not waive privilege beyond "matters actually revealed").  In the meantime, Defendant has denied having raised defense of counsel during discovery and has represented that the issue would not come up at trial as part of Defendant's case.  (ECF No. 140 at 27.)

"Affirmative defenses, by their nature, 'are complete defenses that, once proven by the defendant, negate liability,' notwithstanding the plaintiff's ability otherwise to prove all elements of his claim." *Richardson v. K.C. Concepts, LLC*, No. 6:08–3186–HMH, 2010 WL 500418 (D.S.C. 2010) (citing *U.S. v. Davenport*, 519 F.3d 940, 945 (9th Cir.2008)); *see also Rogers v. Unum Life Ins. Co. v. America*, 86 F.3d 1152 (4th Cir. 1996) (unpublished decision) (finding that the affirmative defense of the advice of counsel failed because the appellants did not prove that supervisor fully, correctly, and honestly disclosed all material facts of which he knew, or should have known, or that he followed his counsel's advice in good faith).  To that end, "advice of counsel is placed in issue where the client asserts a claim or defense, **and attempts to prove that claim or defense by disclosing or describing an attorney client communication**." *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994)(emphasis added); *see also Shaheen v. Wellpoint Companies, Inc.*, 490 Fed. Appx. 552, 557 (unpublished decision)(citing *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994)).  In other words, even when a party acknowledges that it sought the advice of counsel, "the party must by some specific act or assertion put the **content** of that advice behind its claim of good faith—making it 'a factual basis of a . . .defense.'" *Henry v. Quicken Loans, Inc.*, No. 04-40346, 2008 WL 2610180, at *4 (E.D.Mich. June 30, 2008) (emphasis in original).

The court is careful not to misapply the reasoning process of some insurance bad faith cases which held that insurance companies implicitly put their communications with counsel at issue in the defenses raised in response to the plaintiff's claims.  *See generally Hege v. Aegon USA, LLC*, Nos. 8:10–cv–1578–GRA, 7:10–cv–1630–GRA, 7:10–cv–1631–GRA, 1:10–cv–1635–GRA, 2011 WL 1791883 (D.S.C. May 10, 2011); *City of Myrtle Beach v. United Nat'l Ins. Co.*, No.

4:08–1183–TLW–SVH, 2010 WL 3420044 (D.S.C. Aug. 27, 2010).  The rationale does not apply squarely to this case.  Of course, there are indeed certain types of cases, such as willful patent infringement cases (i.e., *Technimark v. Crelin*, 1997 U.S. Dist. LEXIS 9456 (M.D.N.C. May 22, 1997), bad faith insurance cases (as noted above), and malicious prosecution cases *(Broyhill v. Resolution Management Consultants, Inc.*, 401 S.C. 466, 736 S.E.2d 867 (S.C. Ct. App. 2012)) where advice of counsel is squarely at issue and counsel makes a conscious decision to assert a defense for the purposes of negating an element of a particular crime or tort or where the subject matter is so entwined with counsel's advice simply based on the nature of the case itself.  *See generally Hege*, 2011 WL 1791883 at *4; *Myrtle Beach*, 2010 WL 3420044 at *4 ("an insurer's thoughts and knowledge are at the center of a claim for bad faith."); *see also Roehrs v. Minn. Life Ins. Co.*, 228 F.R.D. 642, 646–47 (D.Ariz.2005) (finding implied waiver of attorney-client privilege by insurance adjuster's deposition testimony where it was revealed that information obtained from counsel was used in the decisionmaking process that defendant claimed was made in good faith).  The court does not, however, find the instant case to be one of the above-referenced sort.

Courts rely on the language of the asserted affirmative defenses and the nature of the causes of action raised in the suit when determining waiver of the privilege.  *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863.  Having analyzed matters here, the court agrees with Defendant and would not find a waiver in these circumstances unless Defendant specifically relies on communications with its counsel or advice from its counsel as grounds for defending itself against Plaintiff's claims.  Here the Defendant has made no attempt to prove a "claim or defense by disclosing or describing an attorney client communication" and represents that it has no intention to do so.  (ECF No. 140 at 27). *See Rhone–Poulenc Rorer Inc.*, 32 F.3d at 863.

-23-

The court is further persuaded by the analysis undertaken by the district court judge in *George v. Wausau Ins. Co.*, No. CIV.A. 99-CV-6130, 2000 WL 1728511 (E.D. Pa. 2000). In that case, the plaintiff argued that the defendant waived its right to assert the attorney-client privilege over some contested documents because it asserted an affirmative defense in its answer that stated that it had at all times acted in a proper and reasonable manner in accordance with the applicable policy and state law. *George v. Wausau Ins. Co.*, No. CIV.A. 99-CV-6130, 2000 WL 1728511, *3 (E.D. Pa. 2000). Although the court acknowledged that other district courts have reached different conclusions concerning whether such language raised the advice of counsel defense and hence waived privilege, the court concluded that the referenced language did not affirmatively raise an advice of counsel defense with sufficient specificity. *Id.* at *3. The court finds similarly here, particularly considering the nature of this case, the manner in which the subject language was presented as a quotation from the Participation Agreement, and Defendant's representations to opposing counsel and this court. As far as this court can tell, there has been no production of privileged materials and no testimony or other revelation about any communications with counsel were asserted by Defendant as part of the defense.[2] Thus, the court finds no waiver of the attorney-

---

[2]Plaintiff cites to deposition excerpts as evidence that "Fifth Third had a closing attorney involved in the closing and earnestly relied on him has been a running theme of Fifth Third's defense." (ECF No. 120 at 7-8.) Having reviewed the excerpts, Plaintiff appears to be speculating as to what might constitute Defendant's defense based on the questions posed to the witnesses, two attorneys involved in the closing and preparation of the loan packages, by Defendant's counsel. Defense counsel's questions, do not represent affirmative testimony or an assertion by the Defendant that Defendant relied on the advice of counsel in making decisions. *See Shaheen v. Wellpoint Companies, Inc.*, 490 Fed. Appx. 552 (4th Cir. 2012) ("We disagree, as WellPoint never asserted advice of counsel as an affirmative defense. Indeed neither Ingle nor Lohmeyer indicated that they relied on advice of counsel in terminating Shaheen, or in making the alleged defamatory statements. Thus, the "at issue" doctrine does not apply.") The court cannot read an intention to rely at trial on the advice of counsel based on the referenced line of questioning. "Advice is not in issue merely because it is relevant. . . ." *Rhone–Poulenc Rorer*

-24-

client privilege on the basis of Plaintiff's "at issue" theory. Plaintiff also contends that Defendant's work product must be produced because Defendant has waived the protection by putting its counsel's analysis at issue in this case. The court has concluded that Defendant has not put its counsel's advice or analysis at issue in this case and thus, there is no waiver of the work product protection either.[3]

A review of the withheld documents confirms that the documents at issue are protected by the attorney-client privilege and/or work product protection. Without revealing the privileged and protected material, the court notes that the documents generally consist of communications to/from outside counsel regarding legal issues and litigation strategy. As reflected on the updated privilege logs submitted, a great many of the documents deal with the related and underlying Burton Creek litigation and as this court has decided above, the Participation Agreement does not vest Plaintiff with any additional interest in privileged and protected documents as to matters of which it was not a party directly or even tangentially through joint representation.

Of course, while Defendant is not required to disclose privileged documents related in some manner to the Burton Creek Loan at this time, to the extent Defendant later attempts to introduce at trial any evidence that it acted in good faith or in reliance on counsel, it will not be permitted to do so as Plaintiff would then be entirely deprived of the right to have pretrial discovery on matters material to the testimony or evidence. *See Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891,

---

*Inc.*, 32 F.3d at 863.

[3] "Several cases have held that defendants also lose the work product and attorney-client privileges once they assert . . . an affirmative defense." *Walker v. County of Contra Costa*, 227 F.R.D. 529, 533 (N.D.Cal. Apr.14, 2005). Because Plaintiff's theory of implied waiver for placing information "at-issue" is the same in the work product context, the court's conclusion on this issue applies to Plaintiff's waiver argument as to work product as well.

894 (S.D.N.Y. 1990) ("A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense.") Either waiver applies, forcing disclosure of the related materials, or the disclosing party is barred from introducing the disclosed evidence at trial. "Since it is not presently possible to ascertain the extent and scope of any waiver of the attorney-client privilege by the parties at trial, it is also not possible at this time to determine what the scope of discovery of such privileged materials will be." *International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177 (M.D.Fla. 1973).

If Defendant determines that it wants to offer otherwise privileged and/or protected documents in support of its defenses, it will have to abandon the privilege or protection and produce the documents to Plaintiff immediately and allow Plaintiff to inquire into the documents as would otherwise be permitted during the course of discovery. As matters currently stand, however, the court declines to enter a blanket ruling that Defendant waived the assertion of the attorney-client privilege and work-product protection as to a broad category of documents by placing them "at issue."

### 3. OTHER CATEGORIES OF DOCUMENTS

Upon its review of Defendant's privilege logs, Plaintiff contends that Defendant has overasserted its privilege claims. (ECF No. 111-1 at 20.) At present, Plaintiff argues that five remaining categories or types of documents are not privileged or protected. The court has conducted a review of the documents sufficient to evaluate whether credible privilege or protection claims have been asserted and thus, addresses each of these categories of documents in turn.

### a.    Documents Prepared in Connection with the Underlying Litigation.

Plaintiff declares that it is entitled to any documents described on the privilege logs, in whole

or in part, as "prepared in connection with Burton Creek collection litigation, "prepared in connection with the Burton Creek foreclosure litigation," or "prepared in connection with McCollum Trucking Litigation" or related to the Underlying Litigation. (ECF No. 111-1 at 20.) Plaintiff argues that these materials and communications were "prepared for the benefit of First South and relate to the Loan." (ECF No. 111-1 at 20.) Further, Plaintiff argues that any privilege or protection that could be applicable to these documents has been expressly or implicitly waived as to Defendant because, according to Plaintiff, Defendant and McGuire Woods communicated with Plaintiff about legal strategy and representation of the lenders in the underlying litigation, because the parties "entered into a joint defense agreement providing for the free exchange of this information," and because the handling of the Underlying Litigation is "squarely at issue in this case." (ECF No. 111-1 at 20-21.) For the reasons outlined above, Plaintiff is not entitled to privileged/protected documents prepared in connection with the Underlying Litigation matters.

**b.     Documents Related to the Closing of the Loan, including Communications with lenders' closing counsel.**

Plaintiff argues that it is entitled to all documents referenced on the privilege logs related to the closing of the loan and any communications with Attorney Chris Stevenson. (ECF No. 111-1 at 21-23.) Plaintiff contends that it is contractually entitled to these documents because they relate to the Loan and the referenced communications were made for the purpose of being shared with Plaintiff under the terms of the Participation Agreement. (ECF No. 111-1 at 21.) Plaintiff also argues that Defendant "opened the door to these documents by asserting the advice of counsel defense." (ECF No. 111-1 at 22.) For the reasons outlined above, Plaintiff is not entitled to privileged/protected documents relating to the closing of the Loan.

c.    **Documents Related to the Administration, Servicing and Collection of the Loan.**

Plaintiff claims that documents related to the administration, servicing, and collection of the Loan fall within the broad contractual provision that provide Plaintiff with entitlement to any and all documents of every nature in possession of the Lender relating to the Loan.  (ECF No. 111-1 at 23.)  In addition to this assertion, Plaintiff claims that this category of documents is not privileged because the documents were (a) routinely prepared in the ordinary course of administering the Loan; (b) prepared pursuant to regulatory requirements; or (c) other non-litigation purposes.  Plaintiff also argues broadly that correspondence and communications between non-lawyers that merely reflect a request for counsel's legal opinions are not privileged and that communications are not privileged just because an attorney is copied on the correspondence.  (ECF No. 111-1 at 23-25.)  Plaintiff reasons that any privileges have been waived concerning this category of documents because Defendant asserted good faith reliance on counsel as a defense to allegations related to the servicing and administration of the Loan.  (ECF No. 111-1 at 25.)  Consequently, according to Plaintiff, all documentation on the privilege log regarding the Burton Creek Loan generally should be produced.  (ECF No. 111-1 at 25.)

The court has considered Plaintiff's arguments and this grouping of documents in light of several applicable standards.  *See North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D.N.C. 1986) ("Indeed, the client's confidential communication must be for the primary purpose of soliciting legal, rather than business, advice."); *U.S. v. Swain*, Civ. Nos. M90–4–1, M90–4–5, 1991 WL 47102, *8 (D.S.C. 1991) ("Documents which would not be privileged in the hands of the client, . . . do not become privileged in the hands of an attorney.");

-28-

*Stopka v. American Family Mut. Ins. Co., Inc.*, 816 F.Supp.2d 516, 527 (N.D.Ill. 2011) (noting "the fact that an email may not involve an attorney as a direct sender or recipient does not necessarily mean that the attorney-client privilege cannot apply" and finding that the claim that privilege cannot extend to communications between non-lawyers is false under federal law"); *United States v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1077 (N.D.Cal.2002) ("Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer—notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes.    Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.").

Plaintiff's broad pronouncements cannot be taken as absolute rules.  A review of a portion of the subject documents, particularly the documents cited by Plaintiff, reveals that communications between non-lawyers sought or forwarded legal advice to those who needed the information to fulfil the purpose for which the lawyer was consulted and the disclosures to non-lawyer employees of Defendant were made because disclosure was reasonably necessary.  Additionally, the court has determined that correspondence to attorneys (even where non-attorneys are copied or included in the correspondence) do in fact concern legal questions and advice as the primary purpose of the communication.  Further, appropriate privilege redactions were made relative to documents, such as Administrative Loan Status Reports, otherwise "prepared both in the ordinary course of administering the loan and for regulatory purposes" according to Plaintiff.  (ECF No. 111-1 at 25.)  For example, the court has confirmed that Defendant appropriately redacted some sentences of some

Administrative Loan Status Reports that reflected communications with counsel regarding legal advice and legal strategy related to Underlying Litigation matters.   For the reasons outlined above, Plaintiff is not entitled to privileged/protected documents relating to the administration, servicing and collection of the Loan and the court finds that Defendant properly withheld documents (and made appropriate redactions) based on the assertion of the attorney-client privilege and work product doctrine.

> **d.      Documentation Regarding Legal Expenses Incurred in the Underlying Litigation.**

Plaintiff contends that all documentation related to the nature and extent of legal expenses incurred in the underlying case should be produced based on the Participation Agreement and Defendant's reliance on good faith and good faith reliance on counsel.  (ECF No. 111-1 at 26.) Defendant argues that it has met its duty related to the production of documents involving legal expenses.  (ECF No. 117 at 32.)  The court has found that Plaintiff's waiver theories do not entitle Plaintiff to documents withheld on the basis of appropriately asserted protection/privilege.  The court did, however, review documentation regarding legal expenses incurred in the underlying litigation and finds that attorney-client privilege and work-product protection were properly asserted.  *See generally Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("'[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege.'" (internal citation omitted)).

Upon review, the court finds that the referenced documentation and correspondence withheld primarily go to client motives and litigation strategy (including handwritten notes); both in-house and outside counsel are closely involved.   The documents identified by Plaintiff as having been improperly withheld by Defendant squarely fall within the bounds of privilege and protection.  The court further finds that the privilege logs provide both accurate and detailed descriptions of the applicable designations and the subject matter of the documents.   As noted by Defendants, several of the documents relate to matters beyond the underlying litigation (ECF No. 117 at 32) and even concern matters such as this case,  the litigation dispute with First South.   Thus, the court finds that attorney-client privilege and work-product protection were properly asserted as to this category of documents and declines to order further production in the manner and to the extent requested by Plaintiff.

e.      <strong>Documentation Regarding the Participation Agreement.</strong>

Plaintiff claims that Defendant has waived any claim of privilege or work product protection to any documentation concerning the Participation Agreement and any action to be taken or omitted to be taken under the Participation Agreement or the Loan Documents by asserting a good faith and good faith reliance on the advice of counsel defense.  (ECF No. 111-1 at 27.)  As fully discussed above, the court finds no waiver based on this theory.  A review of the documents reveals that these documents were appropriately withheld and redacted where applicable.

<strong>CONCLUSION</strong>

For the reasons set forth herein and upon consideration of the record in this matter, the court denies Plaintiff's Motion to Compel.  (ECF No. 111.)  Plaintiff's waiver arguments do not stand and Plaintiff is not entitled to privileged and protected documents properly withheld.  Defendant has

-31-

submitted several thousand documents for *in camera* review and determination as to whether the documents are protected from disclosure due to the attorney-client privilege or work-product doctrine.   Based on this court's review of a select number of documents and the updated privilege logs submitted, the court finds that Defendant's claims of privilege and protection have been properly asserted and this further support the court's ruling.   Consequently, Plaintiff's Motion to Compel is **DENIED**.   To the extent they have not already been produced, Fifth Third is hereby ordered to produce **any and all non-privileged or protected documents "of every nature" in its possession relating to the Loan** within 15 days consistent with this order.   The parties are further directed to meet and confer and then submit an amended scheduling order in this matter within 20 days of this order.   The amended scheduling order should state that Jury Selection is set for September 5, 2013.

IT IS SO ORDERED.

s/ Mary G. Lewis
United States District Judge

Spartanburg, South Carolina
May 1, 2013